IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RASHIDA MITCHEM, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-1762-M (BH) |
| | § | |
| MORTGAGE ELECTRONIC | § | |
| REGISTRATION SERVICES, INC., | § | |
| (MERS), et al., | § | |
|     Defendants. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the order of reference dated June 8, 2012, this case has been referred for pretrial management.  Before the Court for recommendation is the *Motion to Dismiss and Brief in Support*, filed January 4, 2013 (doc. 18), of defendants Bank of America, N.A., and Federal National Mortgage Association.  Based on the relevant filings and applicable law, the motion should be **GRANTED.**

## I.  BACKGROUND

This case involves foreclosure of real property located at 617 Town Creek Drive, Dallas, Texas 75232 (the Property).  (docs. 16 at 2; 16-1 at 2.)[1]  On October 12, 2012, Rashida Mitchem and Lakendrick Berry (Plaintiffs) filed their first amended complaint asserting claims against E-Loan, Inc. (E-Loan), Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP (BOA),[2] and Federal National Mortgage Association a/k/a

---

[1]  Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2]  Given BOA's alleged status as BAC's successor by merger, Plaintiffs' claims against BAC are considered as if they were asserted against BOA.  *See Enis v. Bank of Am., N.A.*, No. 3:12-CV-0295-D, 2012 WL 4741073, at *1 (N.D. Tex. Oct. 3, 2012) (Fitzwater, C.J.) ("Because BOA is BAC's successor by merger, the court will consider BAC's conduct as if it were BOA's in addressing [the plaintiff's] claims."); *see also* Tex. Bus. Orgs.

Fannie Mae (FNMA).  (doc. 16 at 1.)[3]

Plaintiffs allege that they purchased the Property on or about January 21, 2004, with a promissory note in the amount of $90,000 and a "warranty deed" securing the note in favor of Fieldstone.  (*Id.* at 4.)  At some point after that, Plaintiffs "signed a renewal and extension of the Fieldstone Note" that was assigned to "HSBC Bank, USA" on October 30, 2006.  (*Id.* at 5.)  On October 1, 2007, they "refinanced" their mortgage loan with E-Loan and executed a promissory note in the amount of $98,500, and a deed of trust securing the note in its favor.  (*Id.*)  The deed of trust named E-Loan as the "Lender", and MERS as the "beneficiary" under the deed of trust and the nominee for Lender and its successors and assigns.  (*See* doc. 16-1 at 1–2.)  It provided that the "Note or a partial interest in the Note" could "be sold one or more times without prior notice to Borrower," and that the "rights, remedies, and duties" of the trustee could be "exercised ... by one or more trustees acting alone or together."  (*Id.* at 8.)  Lender was also granted the right to accelerate the note and foreclose on the Property upon Borrower's default or breach of any other covenant under the deed of trust.  (*Id.* at 9.)  As beneficiary under the deed of trust, MERS held legal title to the Property, and as nominee for Lender and its successors and assigns, it could exercise any and all of Lender's interests, "including, ... the right to foreclose and sell the Property, and to take any

---

Code Ann. § 10.008(a) (3), (5) (West 2011) (providing that "all liabilities and obligations" of the merged entity "are allocated to ... the surviving" entity, and any proceedings pending against the merged entity "may be continued as if the merger did not occur").

[3] On November 17, 2010, Rashida Mitchem sued FNMA in state court for claims relating to the foreclosure of the Property.  (doc. 1-3.)  She filed a separate state court action against Fieldstone Mortgage Company (Fieldstone), BOA, and Mortgage Electronic Registration Systems, Inc. (MERS) on February 10, 2012.  (doc. 1-5.)  On April 24, 2012, the actions were consolidated by the state court where the action against FNMA was pending.  (doc. 1-7.)  On June 6, 2012, BOA, MERS, and FNMA removed the consolidated action to this Court asserting federal question jurisdiction and diversity jurisdiction under 28 U.S.C. §§ 1331 and 1332.  (doc. 1.)  Subsequently, Ms. Mitchem requested and was granted leave to file an amended complaint.  (docs. 10 and 14.)  In the first amended complaint, Mr. Berry was added as a plaintiff, and MERS and Fieldstone were apparently dismissed as defendants.  (doc. 16.)

action required of Lender, including, ... releasing and canceling" the deed of trust.  (*Id.* at 3.)

In the "definitions" section, the deed of trust defined "RESPA" as "the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter."  (*Id.* at 2.)  Paragraph 3 of the "uniform covenants" section required Borrower to pay Lender for "Escrow Items," such as taxes, insurance premiums, and community association fees.  (*Id.* at 3.)  Lender could, "at any time, collect and hold [Escrow] Funds ... [and] apply the [Escrow] Funds to pay the Escrow Items no later than the time specified under RESPA."  (*Id.* at 4.)  In addition, Lender was required to "give to Borrower, without charge, an annual accounting of the [Escrow] Funds as required by RESPA."  (*Id.*)  If there was a "surplus" or "shortage", as "defined under RESPA," Lender was to "account to Borrower for the excess funds" and to "notify Borrower" of the shortage, and Borrower would then "pay to Lender the amount necessary to make up the shortage in accordance with RESPA."  (*Id.*)

Plaintiffs claim that after they refinanced their mortgage loan with E-Loan, BOA contacted them and "required [them] to tender payments" to it.  (doc. 16 at 5.)  In May 2010, their "mortgage loan went into default" because they "fell behind on their payments," and they contacted BOA "to set up a reinstatement agreement."  (*Id.* at 6.) On June 23, 2010, MERS, as nominee for Lender and its successors and assigns, assigned the note and deed of trust to BOA.  (*See* doc. 18-3 at 2.)  The assignment was recorded with the Dallas County Clerk.  (*See id.* at 2–3.)

Plaintiffs complain that despite their efforts to have the note reinstated, BOA "foreclosed on the Property without giving them the opportunity to cure [the] default and without providing them with notice of the foreclosure sale pursuant to the Texas Property Code" on August 2, 2010.  (doc.

16 at 7; *see also* doc. 18-4 at 2.)  The substitute trustee's deed filed with the Dallas County Clerk

on August 11, 2012, indicated that BOA was the mortgagee and mortgage servicer of Plaintiffs's

mortgage and FNMA purchased the Property at the foreclosure.  (doc. 18-4 at 2.)

According to Plaintiffs, "the foreclosure sale was ... invalid and unenforceable" because E-

Loan and BOA did not comply "with the RESPA requirements" under the deed of trust.  (doc. 16

at 7.)  They complain that "[a]t no time" until the foreclosure sale took place were they informed or

given "documentation" regarding MERS's assignment of their loan to BOA.  (*Id.* at 5–6.)  They

claim they "received very little, if any, accurate information pertaining to their escrow account"

from E-Loan and BOA.  (*Id.* at 6.)  Plaintiffs were "always confused about [their] escrow account

during the course of the [their] loan" because E-Loan and BOA "were always inconsistent with

sending [them] written correspondence" and "did not send [them] monthly or annual statements,

accounting reports, notices of shortages or deficiencies, and/or correct balances on a regular basis."

(*Id.*)  They received only the initial RESPA loan closing disclosures from E-Loan and "an incorrect

[note] reinstatement figure provided by [BOA's] counsel" after they defaulted.  (*Id.*)

Claiming that "failing to comply with RESPA [was] a material breach" of the deed of trust,

they state "Defendants" "were in default" and were the "first-breachers" of the deed of trust because

they "did not comply with RESPA."  (*Id.* at 7.)  They assert claims against Defendants for breach

of contract and wrongful foreclosure.  (*Id.* at 8–11.)  They seek numerous declarations, attorney's

fees, injunctive relief to restrain Defendants from evicting them from the Property, statutory, actual,

and exemplary damages, pre- and post-judgment interest, and court costs.  (*Id.* at 12–16.)

On January 4, 2013, BOA and FNMA (Defendants) moved to dismiss Plaintiffs' complaint.

(doc. 18.)  Plaintiffs did not respond.  The motion is now ripe for recommendation.

## II. RULE 12(b)(6) MOTION

Defendants move to dismiss Plaintiffs' complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (*See* doc. 18.)

### A.      Rule 12(b)(6) Standard

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the pleadings.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  The alleged facts must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the miscon-

duct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556, U.S. at 678 (citations omitted).  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196.  When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  "If . . . matters outside the pleading[s] are presented to and not excluded by the court," however, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003).  Lastly, it is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst*

6

*Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir.

1994).  Accordingly, documents falling under these categories may be properly considered without

converting the motion to dismiss into a motion for summary judgment.

Here, Plaintiffs have attached to their complaint a copy of what they contend is the deed of

trust they executed in favor of E-Loan.  (*See* doc. 16-1.)  This document is considered part of the

pleadings.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.  In addition, Defendants

attached to their motion to dismiss copies of what they claim are the deed of trust, MERS's

assignment of the note and deed of trust to BOA, the substitute trustee's deed, a notice of default

BOA mailed Plaintiffs on May 17, 2010, and notices of acceleration and foreclosure sale BOA's

counsel mailed Plaintiffs on July 3, 2010.  (*See* docs. 18-1–18-6.)  Because the acceleration and

foreclosure sale notices[4] sent by counsel are referenced in Plaintiffs' complaint and are central to

their claims, they are considered part of the pleadings.  *See Collins*, 224 F.3d at 499; *see also Hassell*

*v. Bank of Am., N.A.*, No. CIV.A. H-12-1530, 2013 WL 211154, at *1 n. 6 (S.D. Tex. Jan. 18, 2013)

("Because both the ... Notice [of default] and the Deed of Trust are central to Plaintiff's claim and

are referenced in the complaint, the Court considers them in the analysis of Defendants' motion.").

Although BOA's notice of default is also central to Plaintiffs' claims, the purported copy of such

notice attached to Defendants' motion to dismiss (doc. 18-5) cannot be considered for purposes of

their motion because Plaintiffs do not reference it in their complaint and they contend that BOA "did

not send [it]."  (*See* doc. 16 at 8.)  Lastly, the recorded assignment and the substitute trustee's deed

are matters of public record that can be judicially noticed.  *See Matter of Manges*, 29 F.3d 1034,

---

[4]  Plaintiffs state that after they defaulted on their payments, "opposing counsel" sent them "an incorrect
[note] reinstatement figure."  (doc. 16 at 6.)  A document attached to Defendants' motion indicates that on July 3,
2010, counsel for BOA mailed Plaintiffs a notice of acceleration, which informed them of their "right to reinstate the
loan as provided in the Deed of Trust" and also "enclosed [a] Notice of Trustee's Sale." (doc. 18-6 at 3.)

1042 (5th Cir. 1994) (taking judicial notice of "unimpeached certified copies of ... deeds and assignments"); *see also* Fed. R. Evid. 201(b)(2) (a court may take judicial notice of a fact when "it can be accurately and readily determined from sources whose accuracy cannot reasonably be disputed"). Because the attachments to Plaintiffs' complaint and Defendants' motion to dismiss that are being considered in connection with Defendants' motion are either part of the pleadings or matters subject to judicial notice, conversion of the motion into a motion for summary judgment is unnecessary. *See Norris*, 500 F.3d at 461 n. 9.

**B.**     **Breach of Contract**

Defendants move to dismiss Plaintiffs' breach of contract claim on three grounds: (1) "Plaintiffs do not point to a specific provision of the contract breached by BOA" (and by implication E-Loan); (2) the claim fails because Plaintiffs materially breached the contract; and (3) "Plaintiffs have no damages as a result of BAC's [and E-Loan's] alleged breach." (doc. 18 at 3–5.)

The essential elements of a breach of contract claim in Texas are: (1) the existence of a valid contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

*1.     Defendants' Breach*

Defendants do not dispute the existence of a valid contract; rather, they dispute the *terms* of the contract that were allegedly breached. (*See* doc. 18 at 4.) Noting that Plaintiffs' breach of contract claim is premised on "alleged violations of several sections [of] [RESPA]," Defendants contend that Plaintiffs cannot show BOA breached their lending contract because "the Deed of Trust

8

[did] not explicitly incorporate all of RESPA" and they "fail to specifically demonstrate what section of the Deed of Trust [BOA] breached in alleged violation of RESPA."[5]  (*Id.*)

a.    Terms of the Contract

Plaintiffs point to the "definitions" section and paragraph 3 of the "uniform covenants" section of the deed of trust, their lending contract with E-Loan and BOA, and contend that the deed of trust "included language ... that RESPA applied to all escrow items." (doc. 16 at 5.)  They assert that "the parties contracted for and agreed that RESPA would apply to [their] escrow account, [because] RESPA [was] named and explained all throughout the contract." (*Id.* at 8.)

The Fifth Circuit has held that parties to a contract may "expressly incorporate" federal statutes and regulations into their contract.  *Smith v. JPMorgan Chase Bank, N.A.*, No. 12-40816, 2013 WL 1165218, at *2 (5th Cir. Mar. 22, 2013).  Here, in the "definitions" section, the deed of trust defined, "RESPA", in relevant part, as "the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500)." (doc. 16-1 at 2, ¶ Q.)  Paragraph 3 of the "uniform covenants" section required Borrower (Plaintiffs) to pay Lender for "escrow items" such as taxes, insurance premiums, and community association fees. (*See id.* at 3, ¶ 3.)  Lender could, "at any time," collect and hold the escrow funds, and was required to pay the escrow items "no later than the time specified under RESPA." (*Id.* at 4, ¶ 3.)  Lender was also required to "give to Borrower, without charge, an annual accounting of the [escrow funds] as required by RESPA." (*Id.*)  If there was a "surplus" in the escrow account, as that term was "defined under RESPA," Lender was to "account to Borrower for [the] excess." (*Id.*)  Lender was also

---

[5]  RESPA protects borrowers by requiring lenders to fully disclose all mortgage settlement costs and prohibiting predatory practices in the mortgage servicing process.  *See Val-Com Acquisitions Trust v. Chase Home Fin. LLC*, 3:10-CV-1214-K, 2011 WL 1938146, at *3 (N.D. Tex. May 19, 2011); *see also* 12 U.S.C. §§ 2605–2608.

required to notify Borrower of any shortage, and Borrower would "pay to Lender the amount necessary to make up the deficiency in accordance with RESPA." (*Id.*) Viewing these provisions of the deed of trust in the light most favorable to Plaintiffs under a Rule 12(b)(6) standard, the provisions could reasonably be said to incorporate the following RESPA provisions and their corresponding regulations:

- 12 U.S.C. § 2605(g) ("[T]he servicer shall make payments from the escrow account[6] ... in a timely manner as such payments become due."); 24 C.F.R. §3500.17(k) ("Timely payments.");

- 12 U.S.C. § 2609(c)(2)(A)–(B) ("[T]he servicer shall submit to the borrower ... a statement clearly itemizing ... the total amount paid into the escrow account, ... the total amount paid out of the escrow account ... for taxes, insurance premiums, and other charges ... [as well as] the balance in the escrow account" "not less than once for each 12-month period ... at the conclusion of the period."); 24 C.F.R. §3500.17(i) ("Annual escrow account statements.");

- 24 C.F.R. §3500.17(c)(2)–(3) ("The servicer must use the escrow account analysis to determine whether a surplus, shortage, or deficiency exists and must make any adjustments to the account ....");

- 12 U.S.C. § 2609(b) ("[T]he servicer shall notify the borrower not less than annually of any shortage of funds in the escrow account ...."); 24 C.F.R. § 3500.17(f)(5) ("Notice of shortage or deficiency in escrow account."); and

- 24 C.F.R. §3500.17(f)(2)–(3) ("If the escrow account analysis discloses a surplus, the servicer shall, within 30 days from the date of the analysis, refund the surplus to the borrower ..."; and if there is "a shortage of less than one month's escrow account payment, then the servicer ... [may] ... allow a shortage to exist" or "require the borrower to repay the shortage amount

---

[6] Regulation X, RESPA's implementing regulation, defines "escrow account", in relevant part, as: [A]ny account that a servicer establishes or controls on behalf of a borrower to pay taxes, insurance premiums (including flood insurance), or other charges with respect to a federally related mortgage loan, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay. The definition encompasses any account established for this purpose, including a "trust account", "reserve account", "impound account", or other term in different localities.
24 C.F.R. § 3500.17(b) (2009).

....").

(*See* doc. 16-1 at 3–4).

Although the deed of trust does not appear to incorporate all of the RESPA statute, Plaintiffs

have adequately plead the existence of a contract that incorporated some parts of RESPA.  They

have also identified sections of the deed of trust that the Lender could breach by violating certain

RESPA provisions.  (*See id.*)

### b.   BOA and E-Loan's Alleged Breach[7]

"[U]nder Texas law, '[a] breach of contract occurs when a party fails to perform an act that

it has expressly or impliedly promised to perform.'"  *Allice Trading, Inc. v. Shaw Envtl., Inc.*, No.

CIV.A. No. H-06-217, 2007 WL 2873375, at *6 (S.D. Tex. Sept. 28, 2007) (quoting *Stewart v.*

*Sanmina Tex., L.P.*, 156 S.W.3d 198, 214 (Tex. App.—Dallas 2005, no pet.)).

Here, Plaintiffs assert that E-Loan and BOA violated RESPA, and breached the deed of trust,

by failing to: (1) "make timely payments [from] their escrow account" as required by 12 U.S.C.

§2605(g) and 24 C.F.R. §§ 3500.12(g) and 3500.17(k); (2) "provide [them with] annual escrow

statements" as required by 12 U.S.C. § 2609 (c)(2) and 24 C.F.R. § 35.0017(i); (3) "perform escrow

analysis and calculate [the] proper escrow payment[s]" as required by 24 C.F.R.

§ 3500.17(c)(2)–(3); (4) "account for escrow surpluses, shortages, and deficiencies" as required by

24 C.F.R. § 3500.17(f); (5) "provide [them with] notice[s] of escrow shortages or deficiencies" as

---

[7] Plaintiffs joined E-Loan as a defendant in this action.  (*See* doc. 16 at 1.)  The claims against E-Loan are intertwined with those against BOA.  The Court may *sua sponte* consider and dismiss Plaintiffs' claims against E-Loan along with those against BOA on its own motion under Rule 12(b)(6) as long as Plaintiffs are given notice of the Court's intention and an opportunity respond.  *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006); *see also Turner v. AmericaHomeKey, Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *6 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.), *aff'd*, 2013 WL 657772 (5th Cir. Feb. 22, 2013) (explaining that a "court has the authority to consider the sufficiency of a complaint and dismiss an action on its own motion as long as the procedure employed is fair") (internal quotations omitted).  The fourteen days allowed for filing objections to the recommended dismissal ensures that the procedure is fair by providing Plaintiffs with notice and an opportunity to respond.  *See Ratcliff v. Coker*, No. 9:08-CV-127, 2008 WL 4500321, at *3 n. 1 (E.D. Tex. Sept. 26, 2008).

required by 12 U.S.C. §2609(b) and 24 C.F.R. §3500.17(f)(5)[8]; and (6) "respond to counsel['s] qualified written request" (QWR) as required by 12 U.S.C. § 2605(e) and 24 C.F.R. § 3500.21(e). (doc. 16 at 8–9.)

In support of their claim, Plaintiffs contend that E-Loan and BOA "were always inconsistent with sending [them] written correspondence" regarding their escrow account and neither servicer ever provided them with "monthly or annual statements, accounting reports, notices of shortages or deficiencies, and/or correct balances." (doc. 16 at 6, 9.) Essentially, they allege that E-Loan and BOA did not give them "any documents" relating to their escrow account other than the initial disclosures E-Loan provided them at closing on October 1, 2007, and "an incorrect [note] reinstatement figure provided by [BOA's] counsel" after they defaulted in May 2010. (*See id.*)

Plaintiffs do not identify any provision of the deed of trust requiring the mortgage servicer to respond to Borrower's QWRs. (*See* docs. 16, 16-1.) Accordingly, their allegations fail to raise a reasonable inference that either E-Loan or BOA violated 12 U.S.C. § 2605(e)—and breached the deed of trust—by failing to respond to counsel's QWR.[9] They fail to plead a breach of the lending contract on this basis. However, accepting Plaintiffs' allegations as true for purposes of this motion, the allegations do raise a reasonable inference that E-Loan and BOA did not fulfill their contractual obligations to provide them with: (1) annual escrow account statements; (2) notices of escrow shortages; and (3) refunds for any escrow account surpluses, in contravention of 12 U.S.C. §§ 2609(b) and 2609(c)(2)(A)–(B) and 24 C.F.R. §§ 3500.17(f)(2)–(3), (5) and 3500.17(i).

---

[8] Plaintiffs incorrectly cite this regulation as 24 C.F.R. §3500.17(g)(5). (*See* doc. 16 at 9.)

[9] Pursuant to RESPA, if a loan servicer receives a qualified written request (QWR) from the borrower for information about the loan, the servicer must acknowledge the receipt of the QWR within 20 days unless it takes other action requested by the borrower within that time-frame. 12 U.S.C. §§ 2605(e)(1)–(2); 24 C.F.R. § 3500.21(e) (2012).

These allegations also raise a reasonable inference that E-Loan breached the deed of trust (and violated RESPA) by failing to send them escrow account statements and notices of surpluses and deficiencies between October 1, 2007, and October 1, 2008. *See* 12 U.S.C. § 2609(c)(2)(B) (requiring the mortgage servicer to provide the borrower with an escrow accounting statement "not less than once for each 12-month period"); 12 U.S.C. § 2609(b) (requiring the servicer to notify the borrower "not less than annually of any shortage of funds in the escrow account"); 24 C.F.R. §3500.17(f)(2)–(3) (requiring the servicer to refund escrow surpluses to the Borrower "within 30 days"). Plaintiffs' allegations also raise a reasonable inference that BOA breached the deed of trust and violated RESPA for the same reasons as E-Loan on or before October 1, 2008, despite becoming the servicer of their mortgage soon after they refinanced it with E-Loan. (*See* doc. 16 at 4, 6, 9.)

### 2.     *Plaintiffs' Breach*

Defendants contend that Plaintiffs' breach of contract claim is subject to dismissal because "Plaintiffs have conceded in their Petition that they have stopped making payments on their loan," and "[a]s a matter of law, Plaintiffs' default prohibits any recovery on their breach of contract claim[]." (doc. 18 at 5.)

Plaintiffs concede that they failed to perform by alleging that in "approximately May 2010," "they fell behind on their payments" and their "mortgage loan went into default." (doc. 16 at 6.) They essentially contend, however, that their non-performance was excused and they are entitled to sue for breach of contract because E-Loan and BOA breached the deed of trust *first* by failing to send them annual escrow account statements, as well as timely notices of escrow account shortages and surpluses, since these failures constituted "material" breaches of the deed of trust. (*Id.* at 7–8.)

13

Under Texas law, "[a] plaintiff cannot prevail on a breach-of-contract claim when the plaintiff fails to perform its material obligations under the contract." *Blanco Nat. Bank v. Gonzalez*, No. 04-12-00079-CV, 2013 WL 1760604, at *2 (Tex. App.—San Antonio Apr. 24, 2013, no pet.) (mem. op.) (citing *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam) and *Nevins v. Thomas*, 16 S.W. 332, 334 (Tex. 1891)). "[W]hen one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Allice Trading*, 2007 WL 2873375, at *6 (citing *Mustang Pipeline Co.*, 134 S.W.3d at 196); *see also Solis v. Universal Project Mgmt., Inc.*, No. CIV. A. H-08-1517, 2009 WL 2018260, at *5 (S.D. Tex. July 6, 2009) (stating that "Texas law is ... clear that ... a material breach excuses the nonbreaching party's performance; [but] an immaterial breach does not"). "Texas courts follow the Restatement (Second) of Contracts in determining whether a party has materially breached a contract, so as to discharge the other party's obligation to perform his contractual duties."[10] *Chesson v. Hall*, No. CIV A H-01-315, 2007 WL 1964538, at *17 (S.D. Tex. July 3, 2007) (citing *Mustang Pipeline Co.*, 134 S.W.3d at 196) (emphasis deleted). A breach "is material if the injured party does not receive the substantial benefit of the bargain" under the contract. *Id.* (citations omitted).

Here, Plaintiffs allege that E-Loan and BOA were the "first breacher[s]" because they failed "to comply with RESPA" and this was a "material" breach of the deed of trust.  (doc. 16 at 9.)

---

[10]  The Restatement (Second) lists five relevant factors in determining whether a party's breach is material:

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances; [and]

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts § 241 (1981).

Nevertheless, Plaintiffs fail to allege any facts showing that any of the factors listed in § 241 of the Restatement (Second) are present. *See* Restatement (Second) of Contracts § 241; *see also Mustang Pipeline Co.*, 134 S.W.3d at 196. Moreover, because Plaintiffs' allegations show that they continued to reside on the Property despite E-Loan and BOA's purported failure to send them the requisite statements and notices beginning October 2008, the allegations fail to raise a reasonable inference that Plaintiffs were deprived of the "substantial benefit of the bargain" by the alleged breaches of the deed of trust. *See Chesson*, 2007 WL 1964538, at *17; (*see also* doc. 16 at 4–8.) Accordingly, the allegations fail to raise a reasonable inference that the breaches were material.

Lastly, because they apparently continued to make their mortgage payments as required by the deed of trust from October 2008 to May 2010, even if E-Loan and BOA were the "first breachers" of the deed of trust, Plaintiffs' allegations could not plausibly entitle them to relief since they fail to state a claim that their admitted non-performance was excused and they are entitled to sue for breach of contract. *See Balfour Beatty Rail Inc. v. Kansas City S. Ry. Co.*, No. 3:10-CV-1629-L, 2012 WL 3100833, at *16 (N.D. Tex. July 31, 2012) (citations omitted) ("If the non-breaching party treats the contract as continuing after the breach, … he is deprived of any excuse for terminating his own performance."); *Henry v. Masson*, 333 S.W.3d 825, 841 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("The non-breaching party must [] elect between two courses of action—continuing performance under the contract or ceasing to perform .... If the non-breaching party treats the contract as continuing after the breach, he is deprived of any excuse for terminating his own performance.").

Plaintiffs' breach of contract claim fails due to their admission that they ceased performing

under the contract in May 2010, and it should therefore be dismissed for failure to state a claim.[11]

## C.   **Wrongful Foreclosure**

Defendants next argue that "Plaintiff's wrongful foreclosure claim is invalid and should be dismissed: because: (1) Plaintiffs fail to plead any of the elements of the claim; (2) Plaintiffs cannot recover because they have not tendered "all amounts due and owing under the note and deed of trust" and "cannot show any damages resulting from any alleged wrongful foreclosure"; and (3) "Plaintiffs' notice allegations are conclusory and factually unsupported." (doc. 18 at 6–8.)

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, and unfairness in foreclosure proceedings. *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)). In Texas, "a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property." *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug.1, 2011). The plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)). A procedural defect may occur when the foreclosing party either "fails to comply with statutory or contractual terms," or "complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings." *Matthews*, 2011 WL 3347920, at *2. Recovery is not available merely by showing a defect in the foreclosure process; "it is also necessary that there be [a] [grossly] inadequate selling

---

[11] Because the issue of Plaintiffs' performance under the deed of trust is dispositive of their breach of contract claim, it is unnecessary to reach Defendants' argument regarding Plaintiffs' damages.

price resulting from the defect." *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, C.J.).  "A grossly inadequate price ... [has] to be so little as to shock a correct mind."  *Martins v. BAC Home Loans Servicing, L.P.*, — F.3d —, No. 12-20559, 2013 WL 3213633 (5th Cir. June 26, 2013) (citations and internal quotation marks omitted).

Here, Plaintiffs allege that "E-Loan and/or [BOA] [are] liable for committing a common-law wrongful foreclosure" because they "failed to comply with the contractual terms of the deed of trust [and] [the] Texas Property Code § 51.002(d)" in that they did not provide Plaintiffs with notice of default and opportunity to cure or notice of the foreclosure sale.[12]  (doc. 16 at 11.)  Consequently, they seek to set aside the foreclosure, arguing that the substitute trustee's deed is "invalid and unenforceable."  (*Id.* at 12.)

Even if accepted as true for purposes of this motion, Plaintiffs' allegations could not plausibly entitle them to relief because they fail to allege any facts showing that the Property's selling price ($121,908.12) was grossly inadequate in that it "so little as to shock a correct mind." *See Martins*, 2013 WL 3213633; (*see also* docs. 16; 18-4 at 2.)  They also fail to allege a causal connection between BOA's purported failure to provide them with the requisite notices and any grossly inadequate selling price.  Accordingly, they do not state a viable wrongful foreclosure claim against BOA.  *See Byrd v. Chase Home Fin. LLC*, No. 4:11-CV-022-A, 2011 WL 5220421, at *4

---

[12]   To conduct a lawful foreclosure in Texas, a mortgagee or mortgage servicer "must strictly satisfy the notice requirements set forth in the deed of trust and prescribed by law."  *Gossett v. Fed. Home Loan Mortg. Corp.*, No. CIV.A. H-11-508, 2013 WL 321664, at *5 (S.D. Tex. Jan. 24, 2013) (citing *Univ. Savings Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982)).  "Texas law requires two primary notices in the foreclosure context: a notice of default, and a notice of sale."  *Willeford v. Wells Fargo Bank, N.A.*, No. 3:12-CV-0448-B, 2012 WL 2864499, at *4 (N.D. Tex. July 12, 2012).  Section 51.002(d) of the Tex. Prop. Code requires a mortgagee or mortgage servicer to provide to the debtor notice of default and intent to accelerate and to give the debtor an opportunity to cure the default within a minimum of 20 days. *See* Tex. Prop. Code § 51.002(d). If the mortgagee or mortgage servicer invokes the power of sale under the deed of trust, it must provide to the debtor notice of the time and place of the foreclosure sale at least 21 days prior to the date of the sale by posting notice in the county where the property is located, filing the notice with the office of the county clerk, and "serving written notice of the sale by certified mail on each debtor." *See id.* § 51.002(b).

(N.D. Tex. Oct. 31, 2011) (dismissing wrongful foreclosure claim where the plaintiffs alleged they did not receive the requisite notices under Tex. Prop. Code § 51.002(b),(d) but they did not allege any facts establishing the other elements of the claim, including a grossly inadequate selling price resulting from such a defect); *see also Pollett v. Aurora Loan Services*, 455 F. App'x 413, 415 (5th Cir. 2011) (per curiam) (affirming dismissal of wrongful foreclosure claim where the plaintiff "failed to allege ... a grossly inadequate selling price and a causal connection between a defect in the foreclosure sale proceedings and the grossly inadequate selling price").

In addition, Plaintiffs entirely fail to state a wrongful foreclosure claim against FNMA and E-Loan because they do not allege that either Defendant was involved in the foreclosure proceedings.  The foreclosure sale took place on August 3, 2010, when E-Loan no longer owned or serviced Plaintiffs' mortgage.  (*See* docs. 18-3 and 18-4.)  The substitute trustee's deed reveals that BOA was the mortgagee and mortgage servicer of Plaintiffs' mortgage at the time of the foreclosure, the substitute trustee conducted the foreclosure sale, and FNMA purchased the Property directly from the substitute trustee.  (*See* doc. 18-4 at 2.)

Because Plaintiffs' claim for wrongful foreclosure is factually unsupported, this claim should also be dismissed for failure to state a claim upon which relief can be granted.[13]

---

[13]     Defendants contend that Plaintiffs' wrongful foreclosure claim fails because Plaintiffs "never offered to tender all amounts due and owing under the note and deed of trust." (doc. 18 at 7.) "Texas courts have held that tender of whatever sum is owed on the mortgage debt is a condition precedent to the mortgagor's recovery of title from a mortgagee *who is in possession of the property* and claims title under a void foreclosure sale." *Franklin v. BAC Home Loans Servicing, LP*, No. 3:10–CV–1174–M, 2012 WL 2679496, at * 10 (N.D. Tex. June 6, 2012), *recommendation adopted*, 2012 WL 2688809 (N.D. Tex. July 5, 2012) (citation omitted) (emphasis added).  Here, Defendants have not alleged they are in possession of the Property, and Plaintiffs specifically request injunctive relief to prevent Defendants from taking possession.  (*See* doc. 16 at 14–15.)  Accordingly, this argument does not dispose of Plaintiff's wrongful foreclosure claim.  Defendants also argue that Plaintiffs' claim fails because BOA mailed Plaintiffs the requisite notices.  (*Id.* at 8–9.)  In support, Defendants point to the copies of what they contend are those notices, which they attached to their motion to dismiss.  (docs. 18-5; 18-6.)  These documents cannot be considered with Defendants' motion because they are neither attached to nor referenced in Plaintiffs' complaint.  *See Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Collins*, 224 F.3d at 499.  Ultimately, given Plaintiffs' failure to factually plead the last two elements of a wrongful foreclosure claim, it is unnecessary to consider this argument.

## D.   <u>Declaratory Judgment</u>

Defendants argue that Plaintiffs' "request for declaratory relief is without merit" because they "have asserted no independent cause of action on which to predicate [it]."  (doc. 18 at 9.)

Plaintiffs seek numerous declarations, presumably under the Texas Declaratory Judgments Act, codified in §§ 37.001–37.011 of the Texas Civil Practice & Remedies Code.[14]  "The Texas act is a procedural, rather than substantive, provision, and would generally not apply to a removed action" such as this one.  *See Brock v. Fed. Nat'l Mortg. Ass'n*, No. 4:11-CV-211-A, 2012 WL 620550, at *5 (N.D. Tex. Feb. 24, 2012).  In light of removal, the action may be construed as one brought under the federal Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201, 2202.  *See Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012) ("When a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted to one brought under the federal [DJA].").

The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C.A. § 2201 (West 2010).  Notably, the Act "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law."  *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:03-CV-1658-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater,

---

[14]     Since Plaintiffs initiated this action in state court, their declaratory judgment action is presumed to be asserted under the Texas Declaratory Judgments Act. The declarations they seek include: (1) "[E-Loan] and/or [BOA] materially breached the covenants of the deed of trust"; (2) "Defendant[s] forfeited [their] security interest in the Property by breaching the deed of trust"; (3) "Defendants' ... material ... breaches of the deed of trust rendered the foreclosure invalid and unenforceable"; (4) "FNMA's title is void and unenforceable as a matter of law"; and (5) "Plaintiffs maintain a right to cure the default and receive an off-set of the amount owed." (doc. 16 at 12–13.)

C.J.) (citations and internal quotation marks omitted).  It is an authorization, not a command, and gives federal courts broad, but "not unfettered," discretion to grant or refuse declaratory judgment. *Id.*    Here, given Plaintiffs' failure to state a viable claim for relief against any of the Defendants or show that a genuine controversy exists between the parties, their declaratory judgment action should also be dismissed.  *See Bell*, 2012 WL 568755, at *8 (denying the plaintiff's request for declaratory judgment where she had alleged no facts leading to a conclusion that a present controversy existed between her and the defendant); *Turner*, 2011 WL 3606688, at *5–6 (declining to entertain the plaintiff's request for declaratory judgment where he had not pleaded a plausible substantive claim).

## E.    <u>Injunctive Relief</u>

 Defendants argue that "Plaintiffs are not entitled to injunctive relief" because they "have failed [to] state a claim upon which relief can be granted."  (doc. 18 at 9.)

"To obtain injunctive relief, [a] plaintiff is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits.'"  *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).  Plaintiffs request a temporary restraining order and a temporary and permanent injunction to prevent Defendants and their agents from obtaining possession and "evicting [them] from the Property."  (doc. 16 at 14–15.)  Because their substantive claims are subject to dismissal on the merits, they cannot establish any likelihood of success on the merits.  *See Jackson*, 2011 WL 3874860, at *3.  Accordingly, Plaintiffs' request for injunctive relief should be denied.[15]

---

[15]    In their "prayer," Plaintiffs request actual, statutory, and exemplary damages, attorney's fees, pre- and post-judgment interest, and court costs.  (*See* doc. 16 at 15–16.)  Chapter 38 of the Texas Civil Practice and Remedies Code allows recovery of attorney's fees in a breach of contract suit. *See* Tex. Civ. Prac. & Rem. Code

20

### III.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 567–68 (N.D. Tex. 2005) (Fitzwater, C.J.) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  Nevertheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint.  *See Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995) (noting passage of 327 days).  Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case.  *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, on February 2, 2012, Plaintiffs amended their state court petition against Fannie Mae. (*See* doc. 1-4.)  While that case was pending, they filed a separate lawsuit against Fieldstone, BOA, and MERS on February 10, 2012, and amended that petition on April 9, 2012.  (docs. 1-5, 1-6.) After the cases were consolidated and subsequently removed to federal court, Plaintiffs amended their complaint with leave of Court on October 29, 2012.  (*See* docs. 10 and 14.)  Based on their amendments in state and federal court, it appears that Plaintiffs have pled their best case to the

---

Ann. § 38.001(8) (West 2008).  To recover such fees, a party must (1) prevail on the breach of contract claim, and (2) recover damages.  *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 666 (Tex. 2009); *Mustang Pipeline Co.*, 134 S.W.3d at 201.  Because Plaintiffs have failed to state a viable breach of contract claim, they have failed to show they are entitled to attorney's fees.  *See Mustang Pipeline Co.*, 134 S.W.3d at 201.  Ultimately, given their failure to allege any viable cause of action, their requests for damages, attorney's fees, and miscellaneous relief should be dismissed.  *See Franklin*, 2012 WL 2679496, at *13 (dismissing request for attorney's fees where all of the plaintiff's claims were subject to dismissal).

Court, and no further opportunity to amend their complaint to sufficiently state a claim for relief is warranted.

## V.  RECOMMENDATION

Defendants' motion to dismiss should be **GRANTED,** and all of Plaintiffs' claims against them should be dismissed with prejudice.  The Court should also *sua sponte* dismiss all of Plaintiff's claims against defendant E-Loan.

**SO RECOMMENDED** on this 8th day of July, 2013.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE